**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRENDA R. POTEAT,
Plaintiff-Appellant,

v.

MACK TRUCKS INCORPORATED,

No. 96-1437

Defendant-Appellee,

and

ROBERT WALTHALL,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CA-93-265-3-19BD)

Argued: December 2, 1996

Decided: January 28, 1997

Before HALL, WILKINS, and NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Steven Kapustin, BLAND & ARNDT, L.L.P., Columbia,
South Carolina, for Appellant. Leigh Mullikin Nason, HAYNS-
WORTH, BALDWIN, JOHNSON & GREAVES, P.A., Columbia,
South Carolina, for Appellee. **ON BRIEF:** Eric S. Bland, Mary Con-

nell Elam, BLAND & ARNDT, L.L.P., Columbia, South Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Brenda R. Poteat appeals the summary judgment order dismissing her Title VII hostile environment action against her employer, Mack Trucks, Inc. For the reasons that follow, we affirm.

I

We review the grant of summary judgment de novo , and we view the facts and inferences drawn therefrom in the light most favorable to the non-moving party. Evans v. Technologies Applications & Service Co., 80 F.3d 954, 958 (4th Cir. 1996). We begin, then, with Poteat's version of the facts.

Poteat works at the Mack Trucks plant in Winnsboro, South Carolina. During October and November, 1992, she was subjected to sexual innuendo and improper physical contacts from her co-worker, Robert Walthall. The harassment continued despite her complaints to management. On December 2, 1992, her lawyer sent a letter to the South Carolina Human Affairs Commission (SCHAC) outlining her complaints in detail. The letter concluded by asking that an investigation be conducted and that the SCHAC issue a right-to-sue letter.

Soon thereafter, Poteat's lawyer asked David Smith, the SCHAC investigator assigned to the case, to notify the EEOC. Smith agreed to do so, though in fact the EEOC was never notified. On January 9, 1993, Poteat's lawyer informed Smith that the harassment had ceased prior to the complaint letter, and Smith responded that the administra-

2

tive remedies had been exhausted and that a complaint would have to be filed in court.[1] On January 25, 1993, the SCHAC sent a form letter stating that because Poteat was no longer being subjected to harassment, the agency could do nothing further, and,"consequently, this is notice that Ms. Poteat's administrative remedy has been exhausted by this agency."

On February 8, 1993, Poteat filed this action in federal court against Walthall and Mack Trucks. In April, Poteat requested that she be supplied with a newer version of a tool that she used in her job line because the older version she was using hurt her arm. Although others with a similar problem had received the newer tool, Mack Trucks initially refused her request and only supplied the newer tool after she complained to upper management. On November 23, 1993, Poteat's lawyer wrote to the EEOC claiming that this refusal constituted retaliation for Poteat's harassment complaints. In another letter written the same day, the lawyer informed the EEOC that he had just discovered that the SCHAC had never notified the federal agency about the initial complaints raised in the December 2, 1993 letter, and he asked that the EEOC investigate and issue a right-to-sue letter "to conform to the ongoing lawsuit."

On February 15, 1994, Poteat filed a verified complaint with the EEOC regarding the hostile environment created by Walthall's harassment in October-November, 1992, and the retaliation of April-May, 1993. Within days she received a right-to-sue letter "issued at your request."

After lengthy discovery, Mack moved for summary judgment because Poteat had failed to exhaust the required administrative remedies. The magistrate judge recommended that the motion be granted

_____

[1] In an affidavit submitted by Poteat in opposition to Mack Trucks' motion for summary judgment, Smith stated that he told Poteat's lawyer that he would "notify the EEOC of Ms. Poteat's claim." In a subsequently dated "supplementary affidavit," submitted in support of the company's summary judgment motion, Smith stated that he told the lawyer that SCHAC procedure involved "notifying the EEOC if a charge of discrimination is perfected." Smith added that"there was at no time a charge of discrimination perfected" by Poteat or her lawyer.

on the ground that Poteat had failed to timely file a proper complaint with EEOC and, further, that she was not entitled to equitable relief from such non-compliance. The refusal to recommend equitable relief rested primarily on the fact that Poteat was represented by counsel from the outset. The district court adopted the magistrate judge's report and granted summary judgment in favor of Mack Trucks. Poteat appeals.[2]

II

A federal court can assume jurisdiction over a Title VII claim, such as the one alleged by Poteat, only after the claimant has exhausted the various administrative procedures set forth in 42 U.S.C. § 2000e-5(b). We recently summed up the process by which the court attains subject matter jurisdiction as follows:

> Title VII . . . establishes a multi-tiered administrative scheme pursuant to which a claimant is required first to file a discrimination claim under state law, where such law exists, and may not proceed to federal district court until state proceedings under state law have commenced and, after the deferral period, the EEOC has made its own determination as to the validity of complainant's claim and issued a right-to-sue letter.

Davis v. North Carolina Dept. of Correction, 48 F.3d 134, 138 (4th Cir. 1995). In South Carolina, which has anti-discrimination laws similar to Title VII and a "deferral agency" with essentially the same powers as the EEOC, a claimant must first file her claim with such agency within 180 days from the last act of discrimination. See id. (under 42 U.S.C. § 2000e-5(c), "commencement of proceedings under state law is a prerequisite to EEOC action where a state remedial scheme exists."). The purpose of this deferral procedure is to give the state agency a chance to resolve the claim and thereby possibly obviate the need for the involvement of the federal agency or courts.

_____

[2] After a bench trial, judgment was entered in favor of Walthall on all the claims against him, and Poteat does not appeal that judgment. She voluntarily dismissed her state-law claims against Mack.

4

The timely filing of a verified complaint with the EEOC is another precondition to filing suit. In South Carolina and other deferral states, the complaint must be filed with the EEOC by the earlier of 300 days from the last discriminatory act or 30 days from the termination of the state agency's proceeding. For our purposes, the last act of harassment occurred in November, 1992.**3** A year passed before the EEOC had actual notice of the allegations, and two more months before a properly verified complaint was finally filed with the EEOC.

"`[A]ction by the EEOC . . . is a predicate for litigation based on the federal statute.'" Id. at 137 (quoting Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 825 (1990)) (alteration in original). More precisely, it is the legal entitlement to a right-to-sue letter, rather than the actual issuance of the letter itself, that is the final step to federal court jurisdiction. See Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1104 n.1 (4th Cir. 1985). Under well-settled law, the verification and timeliness requirements are strictly enforced. Failure to file within the statutory time limits is not an absolute bar to maintenance of an action, however.

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). In English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987), we held that equitable tolling can be applied where the employer "has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." See also Weick v. O'Keefe, 26 F.3d 467, 470 (4th Cir. 1994) (equitable tolling justified where employer "lulled [the claimant] into inaction"). Poteat does not dispute that she failed to technically satisfy a number of the statutory preconditions to federal jurisdiction. Instead, she argues that because her lawyer was misled in several respects by the SCHAC, the statutory time limits should be tolled.

A workshare agreement between the EEOC and SCHAC provides the backdrop for Poteat's bid to avoid the statutory filing require-

_____

**3** We deal with the effect of the retaliation allegations separately in Part III below.

5

ments. See 42 U.S.C. § 2000e-8(b). Under this agreement, each agency designates the other as its "agent for the purpose of receiving and drafting charges." The SCHAC must refer all charges to the EEOC "so long as the allegations meet the minimum requirements of [Title VII]." However, "[t]he delegation of authority to receive charges . . . does not include the right of one Agency to determine the jurisdiction of the other agency over a charge." The agreement also requires each agency to "inform individuals of their rights[,] . . . to assist any person to draft a charge in a manner which will satisfy the requirements of both agencies to the extent of their common jurisdiction," and to "explain the rights, responsibilities of the parties under the applicable federal or state statutes."

Poteat points to three instances where she claims that her lawyer was misled by the SCHAC: (1) SCHAC official Smith told Poteat's lawyer that the December 1992 letter would be forwarded to the EEOC; (2) the January 25, 1993 letter from the SCHAC stating that Poteat's "administrative remedies with [the SCHAC] had been exhausted" was reasonably interpreted by Poteat's lawyer as satisfying the entitlement to a right-to-sue letter from the EEOC; and (3) the SCHAC's failure to include the lack of notarization as a reason for closing the file misled Poteat's lawyer into believing that verification was unnecessary.[4] We agree with the district court that these are insufficient grounds for equitable relief.

III

There is no question but that the December 2, 1992 letter from Poteat's lawyer to SCHAC did not satisfy the basic requirements of 42 U.S.C. § 2000e-5(b). Although the time limits are not jurisdictional, we have stressed that "[e]quitable relief is reserved for only the most deserving complainants." Polsby v. Chase , 970 F.2d 1360, 1363 (4th Cir. 1992), vacated on other grounds, 113 S. Ct. 1940 (1993).

_____

[4] The form letter from the SCHAC stated that the agency was "unable to proceed with your complaint because of the reasons checked below." This was followed by eleven separate reasons, e.g., "Your charge form was not notarized," none of which were checked. Instead, the reason given was typed at the bottom on the last line that was designated "Other."

6

Moreover, the verification requirement is strictly enforced. See Balazs v. Liebenthal, 32 F.3d 151, 156-57 (4th Cir. 1994) ("[T]he filing of a sworn charge of discrimination with the EEOC is a mandatory pre-requisite to the validity of the charge . . . .").**5** Even if we assume, as we must at this point, the truth of Poteat's version of the only relevant disputed historical fact--that Poteat's lawyer was told by a state official that the SCHAC would forward a copy of his December 1992 letter to the EEOC--equitable tolling is unwarranted.

The alleged promise to forward the complaint is of little moment because the situation would be unchanged had the letter actually been forwarded. It was unverified, the untimely verified charge could not relate back, and suit was filed before Poteat became entitled to a right-to-sue letter. Poteat is left with her lawyer's misinterpretation of the SCHAC's January 25, 1993 letter, but neither of the allegedly misleading aspects of that letter carry the day for her. First, the SCHAC's failure to note lack of notarization as an alternative reason for closing the case in its January 25, 1993 form letter is scant support for the contention that her lawyer was misled into believing that verification requirements were being waived by the EEOC. And the form letter's statement that the administrative remedies "with this agency" (i.e., the SCHAC) had been exhausted cannot be reasonably interpreted as notice that exhaustion of the process at the next rung--the EEOC--had also been completed.**6**

At bottom, this case is about the tension between the need to maintain an orderly dispute-resolution process, and the desire to permit the resolution on the merits of a possibly meritorious claim. There are no

_____

**5** In Balazs, we held that the regulations permit "charges to be verified and to relate back only so long as the charge is a viable one in the EEOC's files . . . ." 32 F.3d at 157. Once suit is filed, however, "there is no longer a charge pending before the EEOC which is capable of being amended." Id.

**6** The SCHAC's enforcement powers are limited to enjoining unlawful employment practices, reinstatement with back pay, and "any other equitable relief as the court deems appropriate." S.C. Code Ann. § 1-13-90(d)(9) (Law. Co-op. 1986). Inasmuch as Poteat remained in her job and the harassment by Walthall had ceased, the SCHAC apparently felt that there was nothing further it could do.

doubt situations in which tolling might be warranted in cases involving bad advice from the governmental agency charged with enforcing discrimination complaints. See Morrison v. United Parcel Service, 515 F. Supp. 1317 (W.D. Okla. 1981) (allowing tolling based in part on the EEOC's actions that served to confuse complainant of her rights), but see Chappell v. Emco Mach. Works Co., 601 F.2d 1295 (5th Cir. 1979) (equitable tolling not permitted where claimant relied on state official's representations that a Title VII charge had been filed with the EEOC). Poteat has not directed our attention to a case in which equitable tolling was afforded a claimant represented by counsel who was misled as to Title VII's filing requirements, on the other hand, a number of courts have denied relief on the ground that the claimant was represented. See Polsby, 970 F.2d at 1364 (the employer "does not bear responsibility for the mistaken counsel of an attorney with whom Polsby consulted."); Hamel v. Prudential Ins. Co., 640 F. Supp. 103 (D. Mass. 1986) (counsel has ultimate responsibility to monitor his client's claim).

Our denial of relief to Poteat does not signal a lack of concern about the allegations that Poteat's counsel was misled. See Ford v. Bernard Fineson Development Center, 81 F.3d 304, 312 (2d Cir. 1996) ("It is already difficult enough to understand the deadlines for filing Title VII claims. Claimants who master the intricacies of these deadlines have the right to expect that they will not be penalized by a bureaucrat's non-compliance with the Worksharing Agreement."). We are nonetheless mindful of the Supreme Court's statement that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984).

IV

Poteat attempts to bring her February 1994 EEOC charge within the statutory limits under an alternative argument. She points to the allegations in that charge of retaliation in April and May of 1993, and contends that the retaliation was merely part of a "continuing violation" that started in 1992 with Walthall's comments.[7] For two inde-

_____

[7] The magistrate judge simply refused to consider the retaliation argument because Poteat had never attempted to amend her complaint to add a retaliation claim.

pendent reasons, we reject this attempt to link her sexual harassment claims with the alleged retaliation.

A

By her own admission, the hostile environment created by Walthall's harassment ended in November, 1992, while the retaliation six months later occurred in response to Poteat having lodged the complaint with the SCHAC and the ensuing court action."[A] continuing violation may be found where . . . specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994). An isolated instance of discrimination does not amount to the type of "discriminatory policy or practice" that is necessary for a finding of a continuing violation. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996).

B

Poteat's retaliation claim, in addition to comprising an isolated incident, is simply too weak. She complained in April, 1993, that the "twist gun" she used on the assembly line was difficult to use, and in May she complained that the gun was hurting her elbow. Her supervisor told her that a replacement gun would be received in two weeks, although a co-worker had received a replacement some time earlier. She then "suddenly" received a replacement gun the same day she reported the problem to the plant manager and after the company doctor restricted her from using the old gun.

These allegations do not even amount to a colorable case of an adverse employment action, much less a retaliation claim. Her co-worker got the first available gun, and she was told she would have to wait two weeks for hers. Her complaints higher up the chain of command brought satisfactory results almost immediately. Were we to allow this incident to serve as a link to a hostile environment claim, the time limitations of Title VII would quickly become little more than loose guidelines.

AFFIRMED

9